IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

———————————————————————————————————————————————

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) |
| v. | )     No. 08-cr-20397-JPM |
| | ) |
| MORRIS AKINS, | ) |
| | ) |
|     Defendant. | ) |

———————————————————————————————————————————————

**ORDER ADOPTING REPORTS AND RECOMMENDATIONS AND
DENYING DEFENDANT'S MOTIONS TO SUPPRESS THE SHOW-UP AND STATE
COURT IDENTIFICATION OF DEFENDANT AND THE SEARCH OF THE PREMISES
LOCATED AT 949 EAST BROOKS ROAD**

———————————————————————————————————————————————

Before the Court is Defendant Morris Akins's ("Defendant")
Motion to Suppress Show-Up and State Court Identification of
Defendant (Docket Entry ("D.E.") 225), filed May 7, 2010, and
Motion to Suppress the Search of the Premises Located at 949
East Brooks Road (D.E. 226), filed May 12, 2010.  The Court
referred both motions to the Magistrate Judge for Report and
Recommendation on May 17, 2010.  (D.E. 228.)  An evidentiary
hearing was held before the Magistrate Judge on May 18, 2010.
(See D.E. 229.)  The Reports and Recommendations were received
on August 19, 2010.  (D.E. 290, 291.)  The Magistrate Judge
recommended that the Court deny both of Defendant's Motions to
Suppress.  (See id.)  On January 14, 2011, Defendant filed his

Objections to both of the Magistrate Judge's Reports and Recommendations.  (D.E. 299, 301.)  The Government responded in opposition to Defendant's objections on January 31, 2011, stating that the Government "relies on the arguments and law discussed in this response and written arguments in opposition to the Defendant's Motion to Suppress."[1]  (D.E. 309.)

Upon de novo review of the entire record of the proceedings before the Magistrate Judge, having considered the arguments of the Defendant and the Government, the Court ADOPTS the Magistrate Judge's Reports and Recommendations and DENIES Defendant's Motions to Suppress.[2]  The Court addresses each motion to suppress separately.

## I. Standard of Review

"The district judge must consider de novo any objection to the magistrate judge's recommendation."  Fed. R. Crim. P. 59(b)(3); 28 U.S.C. § 636(b)(1).  After reviewing the evidence, the Court is free to accept, reject, or modify the proposed findings or recommendations of the Magistrate Judge.  Fed. R. Crim. P. 59(b)(3).

---

[1] Following the initial hearing before the Magistrate Judge on the Motions to Suppress and before the Reports and Recommendations were issued, the Government filed Memoranda in opposition to both Motions.  (See D.E. 282, 283.)

[2] The Court notes that there were a number of clerical errors in the Exhibit and Witness List (D.E. 263), as well as the other docket entries in this case, that relate directly to the record reviewed by the Court in connection with Defendant's objections to the Magistrate Judge's Reports and Recommendations.  Appendix I, which is attached to the end of this Order, sets out appropriate corrections to the record.

The Court is not required to review those aspects of the Reports and Recommendations to which no objection has been made. Thomas v. Arn, 474 U.S. 140, 150 (1985).  The Court should adopt the findings and rulings of the Magistrate Judge to which a party files no specific objection.  Id.; United States v. Walters, 638 F.2d 947, 950 (6th Cir. 1981).

In addition, de novo review does not require the district court to rehear witnesses whose testimony has been evaluated by the Magistrate Judge.  See United States v. Raddatz, 447 U.S. 667, 675-76 (1980).  The Magistrate Judge, as the fact-finder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine credibility.  Moss v. Hofbauer, 286 F.3d 851, 868 (6th Cir. 2002); United States v. Hill, 195 F.3d 258, 264 (6th Cir. 1999). The Magistrate Judge's assessment of witnesses' testimony is therefore entitled to deference.  United States v. Irrorere, 69 F. App'x 231, 236 (6th Cir. 2003); see also United States v. Freeman, No. 08-5677, 2010 WL 4244268, at *9 (6th Cir. Oct. 19, 2010); United States v. Lowe, No. 3:09-CR-110, 2010 WL 1491417, at *1 (E.D. Tenn. Apr. 12, 2010) ("The court will defer to the credibility finding[s] by the magistrate judge who had an opportunity to evaluate the demeanor and consistency of the witnesses' testimony."); United States v. Brown, No. 1:07-CR-9, 2007 WL 1345463, at *1 (E.D. Tenn. May 7, 2007) ("Credibility

determinations of the magistrate judge . . . should be accepted by a district judge unless . . . he finds a reason to question the magistrate judge's assessment.").

## II. MOTION TO SUPPRESS THE SHOW-UP AND IN-COURT IDENTIFICATIONS

### A. Factual Findings

Before the court is Defendant's May 7, 2010 Motion to Suppress Show-Up Identification and State Court Identification of Defendant by witness Michael Byest ("Byest").[3]  (D.E. 225.) The Magistrate Judge held a combined evidentiary hearing on August 16 and 17, 2010.[4]  (See D.E. 264, 265.)  At that combined evidentiary hearing, the defense called five witnesses: (1) private investigator Dorv Armour; (2) the Defendant; (3) expert witness Dr. John Brigham; (4) Willie Mae Stokes; and (5) Geral Dina Jones.  The defense recalled one government witness, James A. "Tony" Taylor.  See Appendix I, pp. 5-6.  For purposes of the Motion to Suppress the Show-Up and State Court Identifications, the defense relied primarily on the testimony of witnesses Armour, Brigham, Stokes, and Defendant.  The Government called ten witnesses in the consolidated hearing: (1) Lt. Jerry W. Webb, (2) Assistant District Attorney Susan Taylor; (3) Kimitha

---

[3] Defendant has been charged in a four-count indictment with (1) robbery affecting commerce in violation of 18 U.S.C. § 1951; (2) knowingly using and carrying a firearm during a robbery affecting commerce in violation of 18 U.S.C. § 924(c); (3) killing Michael Byest with the intent to prevent him from communicating information relating to a robbery affecting commerce to a law enforcement officer or judge of the United States; and (4) conspiring to affect interstate commerce by robbery.  (See D.E. 190.)

[4] The combined evidentiary hearing addressed both Motions to Suppress.  (See D.E. 264, 265.)

Boscoe; (4) Officer Joseph Henry Knight; (5) Officer Marcus
Reed; (6) Officer Lee Eldelone Potts; (7) Officer Chester A.
Striplin; (8*) Officer James A. "Tony" Taylor; (9) Sgt. Joseph
Poindexter; and (10) Officer Charnetta Woods.  For purposes of
the Motion to Suppress the Show-Up and State Court
Identifications, the Government relied primarily on the
testimony of witnesses Webb, Taylor, and Poindexter.

The Court makes the following findings of fact based on the
record.

On May 10, 2007 at or around 6:00 pm, the Memphis Police
Department ("MPD") responded to a robbery dispatch at the Easy
Way grocery store ("Easy Way") located at 4599 Elvis Presley
Boulevard, Memphis, Tennessee.  (Aug. 16-17, 2010 Supp. Hr'g Tr.
("Tr.") (D.E. 264, D.E. 265) 120.)  The dispatch alerted the MPD
that there were two black male suspects and one female suspect
who left the scene in a white and tan Chevrolet Tahoe ("Tahoe")
with the license plate number "389-LBC."  Lieutenant Jerry Webb
("Lt. Webb") arrived at the scene of the Easy Way and spoke with
a witness, Michael Byest.  (Tr. 122.)

According to Lt. Webb's testimony, Byest was an employee at
the Advance Auto Parts store directly adjacent to the Easy Way
grocery.  (Tr. 122; Ex. 25.)  Byest reported to the officers
that he witnessed a man pacing in the Advance Auto Parts'
parking lot.  (Tr. 144.)  A few minutes later, Byest said he saw

a black male with a blue shirt come out of the Easy Way and walk around the back of the store. (Tr. 103.) Byest observed the man jump into the back of the white and tan Chevrolet Tahoe driven by the black male who had previously been pacing in the parking lot and who was accompanied by a black female passenger.[5] (Tr. 122-24.) According to Lt. Webb, Byest provided the officers with a tag number "389-LBC," which was only one character off from the actual tag number "389-LQC". (Tr. 123, 138-39.) Byest informed the officers that he had seen all the individuals and was prepared to make an identification if necessary. (Tr. 125.)

Shortly after the robbery occurred, officers located and detained three suspects: Morris Akins, Willie Mae Stokes ("Stokes"), and Michael Hill. (Tr. 124-25, 140, 143.) The officers brought all three suspects to the scene of the robbery, handcuffed and in separate patrol cars, so that Byest could identify each one individually. (Tr. 124-25, 140.) Within 30 to 35 minutes of the robbery, Byest identified Defendant and Stokes as individuals who fled the scene in the Tahoe. (Tr. 125-26, 143.) He also eliminated Michael Hill as a suspect. (Tr. 126.) Lt. Webb testified that Byest was told that he did not have to "pick out anyone." (Tr. 126.)

---

[5] Byest provided a description of the driver of the getaway vehicle: "early forties, light skinned, no glasses, approximately 5'11' to 6'0". He was wearing a colorful print type shirt and brown pants." (Ex. 25.)

Defendant admits that he was at Advanced Auto Parts on May 10, 2007.  (Tr. 33.)  He testified, however, that he went to Advanced Auto Parts to get a part, but that after he got out of his truck, he changed his mind about going into the store, got back into his truck, and drove to his place of business at 949 East Brooks Road.  (Tr. 33-34.)  Defendant further testified that the police arrived at 949 East Brooks Road, told him of a robbery that had taken place, handcuffed him, and took him back to the Easy Way for identification.  (Tr. 34-36.)  At the Easy Way, Defendant stated that the police brought out four people, one at a time, to the police car where Defendant was handcuffed and sitting in the back of the car, to possibly identify him. (Tr. 37-40.)  According to Defendant, each individual looked at him through the window of the squad car.  The first three individuals seemed to shake their heads indicating "no" (Tr. 37-39), but the last man, brought within 20 feet of the car, nodded his head to indicate "yes."  (Tr. 40.)

There is a discrepancy in the testimony of Lt. Webb and Defendant as to whether Defendant was taken out of the patrol car during the show-up identification.  (TR at 40, 142.)  Lt. Webb testified that Defendant, "as best as [he] could recall," was taken out of the squad car and was standing right next to the car when he was observed by Byest.  (Tr. 141-42.)  Defendant

stated that Byest viewed him 20 feet away, while he was sitting in the back of the squad car.  (Tr. 40.)[6]

In addition to the show-up identification, Byest later made an in-court identification of Defendant at the state court preliminary hearing on May 31, 2007.  (Tr. 157.)  Susan Taylor, the prosecuting attorney with the District Attorney's Office handling the preliminary hearing in state court, testified that she did not point out Defendant to Byest prior to the hearing or show Byest where Defendant would be sitting.  (Tr. 158.)  The recording of Byest's testimony from the state preliminary hearing was admitted into evidence,[7] and the transcript of the hearing was also introduced into evidence.[8]  During the hearing, Byest testified that he worked at Advanced Auto Parts next door to the Easy Way grocery.  (Ex. 28, at pp. 11-12.)  He noticed a white SUV parked on the back side of the Advanced Auto Parts parking lot.  (Id. at p. 13.)  Byest saw a man pacing in the parking lot who never went into the store.  (Id.)  A few minutes later he noticed a man fleeing from the Easy Way around the back

---

[6] The Magistrate Judge noted as follows:

> This court . . . has previously found that Defendant is not a credible witness based on his multiple felony convictions, his bias as an interested party in the proceeding, and the lack of evidence corroborating his testimony. Furthermore, Defendant appeared nervous when he testified about why he was at the Advanced Auto Parts store earlier that day.

(Rep. and Rec. 5 n. 3.)

[7] See Ex. 18
[8] See Ex. 28

side of the store who then jumped into the Tahoe, which fled the scene.[9] (Id. at p. 14.) Byest identified Defendant as the man who fled the Easy Way and jumped into the Tahoe. (Id.)

Dr. Brigham, an emeritus professor of psychology at Florida State University, testified as an expert witness on behalf of the defense. (Tr. 64.) His primary focus of research for thirty years was eyewitness memory. (Tr. 65.) Dr. Brigham said that he would classify Byest's identification of Defendant as "questionable." (Tr. 82.) He testified that the identification was "suggestive" for the following reasons: it was a show-up identification, Defendant was handcuffed, Defendant was not removed from a police car, the witness was told that the get-away truck had been located, and a female accomplice was brought along with Defendant. (Tr. 80-81.) Dr. Brigham testified that research shows that a witness's certainty of an identification is not a reliable indicator of accuracy. (Tr. 88.) Dr. Brigham testified that in his expert opinion, the subsequent state court hearing was "not very meaningful" because there is no way to know if the witness was relying on his memory from the show-up identification. (Tr. 89-91.)

Dr. Brigham provided no written report. (Tr. 93.) His fee is $300 per hour or $1800 per day. (Tr. 93.) He usually testifies on behalf of the defense; he has only testified for

---

[9] According to Byest, the man fleeing the Easy Way was wearing a blue shirt. (Id.)

the prosecution two times out of several hundred.  (Tr. 95.)
Dr. Brigham testified that he is excluded from testifying as an
expert about fifty percent of the time in court.  (Tr. 96.)

### B. Analysis

In her Report and Recommendation, the Magistrate Judge
recommended that Defendant's Motion to Suppress the Show-Up and
In-Court Identifications of Akins be denied.  (Report and
Recommendation ("Rep. and Rec.") (D.E. 291) 2.)  The Magistrate
Judge recommended the following conclusions: (1) the show-up
identification of Defendant was reliable and was not unduly
suggestive (id. at 10-15); and (2) the in-court identification
was reliable (id. at 15-16).

### i. Defendant's Objections to Findings of Fact

Defendant offers numerous objections to the Magistrate
Judge's proposed findings of fact.  (See Def.'s Objs. to the
Report and Recommendation on his Mot. to Suppress the Show-Up
and In-Court Identifications ("Def.'s Objs.") (D.E. 299).)  The
Court addresses Defendant's factual objections in turn.

Defendant objects to the Magistrate Judge's finding that
Defendant introduced, as Exhibits 13 and 14, "photographs
related to the scene of the incident" (Rep. and Rec. 2), because
those exhibits were of a gun seized at 949 East Brooks Road.
(Def.'s Objs. 1.)  Defendant makes a similar objection as to
Exhibit 17, which the Magistrate Judge described as "a cd of the

relevant 911 dispatch calls" (Rep. and Rec. 2), because the CD "contains multiple 911 calls and police dispatch traffic excerpts." (Def.'s Objs. 2.) Defendant's objections have no effect on the resolution of the motion before the Court. It should be noted that the Magistrate Judge's language described a larger group of exhibits which include Exhibits 13 and 14. Therefore, the Court OVERRULES these objections.

Defendant argues that the Magistrate Judge erred in finding that Byest's statement is a single page document labeled A/T 8, because it is a three page document labeled A/T 8-10. (Def.'s Objs. 2.) Defendant's objection lacks merit. The Report and Recommendation does not refer to Byest's statement as a single page document. The Court OVERRULES Defendant's objection.

Defendant argues that the Magistrate Judge failed to note that the Government also introduced the statements of Sergeant Poindexter and Andrew Edwards ("Edwards"), an employee working at the Easy Way the day of the robbery. (Id.) Defendant also argues that the Magistrate Judge erred in finding that "the Advance Auto Parts store [was] directly adjacent to the Easy Way grocery" (Rep. and Rec. 3), because a "little icehouse sits between the parts store and Easy Way." (Def.'s Objs. 2.) Defendant's objections are distinctions without a substantive difference and have no effect on the resolution of the motion

before the Court.  Accordingly, the Court OVERRULES Defendant's
objections.

Defendant objects to the finding that Byest was murdered on
February 17, 2008, because "there has been no finding that he
was killed with malice aforethought." (Def.'s Objs. 2.)  Because
a trial on the merits has not been held in this case, a finding
that Byest was murdered is premature.  Accordingly, the Court
SUSTAINS Defendant's objection.

Defendant contends that the Magistrate Judge erroneously
found that "Byest reported to the officers that he witnessed a
man pacing in the Advance Auto Parts parking lot" (Rep. and Rec.
3), because "Lt. Webb never testified to such report, admitted
he didn't recall exact words, had no personal recollection of
what Byest said, and relied on his report and the composite
911/dispatch tape to refresh his recollection prior to
testifying." (Def.'s Objs. 2-3.)  The Court accords deference
to the Magistrate Judge's credibility determinations.  Irrorere,
69 F. App'x at 236.  Moreover, the Court finds that the
Magistrate Judge's finding is supported by evidence in the
record.  Lt. Webb noted that Byest testified on May 31, 2007
that the driver of the Tahoe "never went into the store, just
kept walking front to back, watching." (Tr. 155-56; Ex. 28, at
p. 13-14.)  Byest in his Witness Statement asserts that while
sitting outside the Easy Way by his truck, he "saw the guy drive

up and park at the back end of the building but never came into

the store"; rather, "[h]e kept walking towards the front part of

the store at an angle towards the Easy way." (Ex. 25; <u>see also</u>

Tr. 112.) Thus, the Court OVERRULES Defendant's objection.[10]

Defendant objects to the Magistrate Judge's finding that

Byest "saw a black man with a blue shirt come out of the Easy

Way . . . [and] observed the man jump into the back of the white

and tan Chevrolet Tahoe" (Rep. and Rec. 3), because the record

provides conflicting descriptions of the suspects. (Def.'s

Objs. 3.) The Court is not persuaded. The Magistrate Judge's

finding is based on Byest's witness statement, where he notes

that he saw "the guy with the blue shirt come out of the Easy

Way" and "jump into the back of the truck." (Ex. 25.) Byest's

and Edward's testimony during the preliminary hearing held on

May 31 provide a consistent description of these events. (Ex.

28, p. 5-6, 13-14; Ex. 18.) Lt. Webb testified that the 911

call made by Andrew Edwards provides a similar description of

the robber as a black male wearing a blue shirt (Tr. 137), which

is further corroborated by Edwards's witness statement. (<u>See</u>

Ex. 33.) Therefore, the Court OVERRULES Defendant's objection.

---

[10] Defendant also argues that the Magistrate Judge erred in finding that "Lt.
Webb testified that Byest was told that he did not have to make a positive
identification" (Rep. and Rec. 4), because Lt. Webb "didn't recall many
specific facts about the show[-]up, didn't document information he agreed was
important, and assumes he followed his general procedure, but doesn't recall
exact words." (Def.'s Objs. 4) Defendant's argument lacks merit. The
Magistrate Judge accurately noted the testimony provided by Lt. Webb. The
Court finds Lt. Webb's testimony credible. Accordingly, the Court OVERRULES
Defendant's objection.

Defendant objects to the Magistrate Judge's finding that Defendant "testified that the police . . . told him of a robbery that had taken place at the Easy Way" (Rep. and Rec. 4), because Defendant "testified the police told him about a robbery and, after being transported to 4599 Elvis Presley Boulevard he was able to figure out that an Easy Way had been robbed." (Def.'s Objs. 4.)  The Court SUSTAINS Defendant's objection.  (See Tr. 35-36.)

Defendant argues that the Magistrate Judge erred in failing to determine whether the show-up occurred with Defendant inside or outside of the police car (Rep. and Rec. 5, 11, n. 4), because "Dr. Brigham relied upon it in furnishing his opinion that the show-up was biased." (Def.'s Objs. 4.)  The Magistrate Judge noted that the parties dispute this fact, and the opinion of Dr. Brigham is not essential to the conclusions of law in this Order.  Thus, the Court OVERRULES Defendant's objection.

Defendant challenges the Magistrate Judge's finding that Defendant was not a credible witness.  (Def.'s Objs. 4 (citing Rep. and Rec. 5, n. 3).)  Defendant's self-interest and the lack of corroborating evidence are adequate bases for discrediting his testimony.  Thus, the Court OVERRULES Defendant's objection.

The Court ADOPTS all other findings of fact made by the Magistrate Judge in her Report and Recommendation.  (D.E. 291.)

## ii. Defendant's Objections to Conclusions of Law

Defendant offers several objections to the Magistrate Judge's proposed conclusions of law.  The Court addresses each of Defendant's objections in turn.

Defendant argues that the Magistrate Judge's reliance on United States v. Craig, 198 F. App'x 459 (6th Cir. 2006), Bruner v. Perini, 875 F.2d 531 (6th Cir. 1989), and Stidham v. Wingo, 482 F. 2d 817 (6th Cir. 1973), is misplaced.  (Def.'s Objs. 5 (citing Rep. and Rec. 9).)  Defendant argues that a heightened reliability standard applies at all stages of a capital trial, citing Simmons v. South Carolina, 512 U.S. 154 (1994).  (Def.'s Objs. 5.)  Defendant's reliance on Simmons is misplaced.  That case addressed the narrow issue of "whether the Due Process Clause of the Fourteenth Amendment was violated by the refusal of a state trial court to instruct the jury in the penalty phase of a capital trial that under state law the defendant was ineligible for parole."  512 U.S. at 156.  Simmons does not suggest that a heightened reliability standard applies to all stages of a capital trial.

Defendant objects to the Magistrate Judge's reliance on Bruner as holding that "a show-up did not violate due process," because the case involved an in-court, rather than a show-up, identification.  (Def.'s Objs. 5.)  The Court agrees with Defendant that Bruner is not a persuasive authority in this

case.  The Court finds, however, that the Magistrate Judge's conclusion that the show-up identification was not unduly suggestive is adequately supported by the other case law cited in the Report and Recommendation.  Defendant objects to the Magistrate Judge's reliance on Stidham v. Wingo, 482 F. 2d 817 (6th Cir. 1973), because unlike this case, the facts in Stidham do not reveal whether the results of the show-up were introduced into evidence.  (Def.'s Objs. 6.)  This fact is relevant, according to Defendant, because "a distinction exists between whether conducting a show-up is a Fourth Amendment violation as an unreasonable search or seizure, the apparent complaint in Stidham's § 2254 petition, and whether introducing the fruits of a show[-]up violates the Fifth Amendment due process clause if introduced into evidence."  (Id.)  Defendant cites no case law supporting such a distinction.  The Court finds that the Magistrate Judge's reliance on Craig and Stidham was justified. Therefore, the Court OVERRULES Defendant's objection.

Defendant argues that the Magistrate Judge erred in relying on Byest's "detailed description of Akins" in concluding that the identification was not unduly suggestive (Rep. and Rec. 10), because the Report did not "address or acknowledge that Byest was never asked whether Akins was wearing the same clothes as the driver of the Tahoe getaway vehicle, which Lt. Webb agreed was important information."  (Def.'s Objs. 6.)  The Court finds

16

that the Magistrate Judge's reliance on Byest's description of Defendant was proper.  Byest provided a description of Defendant that was corroborated by the other witnesses and evidence.  As noted previously, Byest provided a distinct description of the driver of the getaway vehicle.  (See Ex. 25.)  Thus, the Court OVERRULES Defendant's objection.

Defendant challenges the Magistrate Judge's conclusion that Byest was not pressured in any way (Rep. and Rec. 10), because the directions Byest was given were "totally verbal" and not documented.  (Def.'s Objs. 6.)  The fact that the officer's directions were verbal rather than written does not undermine the Magistrate Judge's conclusion.  Lt. Webb confirmed that Byest was told he did not have to "pick out anyone."  (Tr. 126.)  For these reasons, the Court OVERRULES Defendant's objection.

Defendant argues that the Magistrate Judge mistakenly relied on the recovery of a silver firearm from where Defendant was arrested in concluding that the identification was reliable.  (Def.'s Objs. 7 (citing Rep. and Rec. 12).)  The Court does not agree.  Specifically, Defendant claims that the Report and Recommendation failed to acknowledge that "the robbery victim described the robber's gun as 'a short snub nosed revolver,'" when "the record reveals that the gun seized was not short or snub nosed."  (Id.)  However, Andrew Edwards correctly described the color of the gun as chrome or silver, which reinforces the

17

reliability of his identification.  (See Exs. 33, 13-14.)
Defendant argues that the Magistrate Judge erred in citing the
ballistics report "without acknowledging that a .38 caliber gun
was seized" and that "the rifling characteristics of the bullet
seized were common to a variety of .32 caliber weapons." (Rep.
and Rec. 7.)  The Magistrate Judge noted that "the ballistics
report confirmed that the firearm recovered had similar
characteristics to a bullet found at the Easy Way." (Rep. and
Rec. 12; see Ex. 36.)  In light of this fact and the evidence
cited by the Report and Recommendation, the Court agrees that
the identification was reliable.  Accordingly, the Court
OVERRULES Defendant's objection.

     Defendant also argues that the Magistrate Judge mistakenly
relied on the recovery of a blue shirt where Defendant was
arrested in concluding that the identification was reliable
(Rep. and Rec. 12), because Byest testified that the robber wore
a light blue, short-sleeved T-shirt with a design.  (Ex. 28, at
pp. 13-14.)  Andrew Edwards described the robber as wearing a
long-sleeved blue shirt.  (Ex. 33.)  While Byest initially
suggested that the shirt was light blue (id. at p. 14), he
described the blue shirt as "kind of dark" with a "little design
on the front" (id. at p. 15).  The officers at the scene
documented that they found the shirt the robber was wearing
during the robbery.  (See Ex. 21, 23, 27.)  The Court finds that

while there is some inconsistency in the witness testimony, the Magistrate Judge correctly determined that the show-up identification was reliable.  The witnesses all testified that the shirt was blue.  Coupled with the other evidence in the record, the court finds the identification reliable.  The Court OVERRRULES Defendant's objection.

Defendant argues that the Magistrate Judge erred in concluding that "Byest viewed Akins for several *minutes* before Akins left the scene" (Rep. and Rec. 13), because this conclusion is unsupported by the testimony.  (Def.'s Objs. 7.) While the Court agrees that Byest never stated that he viewed the Defendant for *several minutes*, the Court finds that Byest provided detailed testimony of the events and described Defendant's actions in detail, as noted in this Order.[11]  (See Exs. 18, 25, 28.)

The Court ADOPTS the conclusions of law made by the Magistrate Judge in her Report and Recommendation.  (D.E. 291.) Accordingly, the Court DENIES Defendant's Motion to Suppress the Show-Up and State Court Identification of Defendant.

---

[11] Defendant also objects to the Magistrate Judge's conclusion that "Byest was selective in his identification" (Rep. and Rec. 14), because the Report failed to acknowledge that "in Byest's state court testimony regarding the show[-]up he denied seeing anything else when Akins was brought to the scene for identification." (Def.'s Objs. 8.)  The Court finds that Defendant provided detailed testimony and OVERRULES Defendant's objection.

### III. MOTION TO SUPPRESS THE SEARCH OF 949 EAST BROOKS ROAD

#### A. Factual Findings

Before the Court is the May 12, 2010 motion of Defendant to suppress all evidence, including but not limited to a firearm and t-shirt, seized by law enforcement officers during a search of the premises located at 949 East Brooks Road, Memphis, Tennessee on May 10, 2007.  (D.E. 226.)  A consolidated evidentiary hearing was held on August 16 and 17, 2010.  (See D.E. 264, 265; see also infra pp. 4-5; Appendix I, pp. 4-6.)  For purposes of the Motion to Suppress the Search of 949 E. Brooks Road, the Government relied primarily on the testimony of Kimitha Boscoe and seven officers with the MPD: (1) Joseph Henry Knight, (2) Marcus Redd, (3) Lee Potts, (4) Chester Striplin, (5) James Taylor, (6) Sergeant Joe Poindexter, and (7) Channetta Woods.  (Id.)[12]  The defense re-called two witnesses: (1) James A. "Tony" Taylor and (2) Geral Dina Jones.  The defense also relied on other testimony previously submitted.  See Appendix I.  The Court makes the following findings of fact.[13]

---

[12] The government also introduced several exhibits: (1) Commercial Lease for 949 East Brooks Road, signed by Tommy Nelson (Ex. 30); (2) Lease Extension signed by Tommy Nelson (Ex. 31); (3) the Consent to Search Form signed by Geral Jones and witnessed by Officers McMoore and Potts (Ex. 32); (4) Andrew Edwards's statement (Ex. 33); (5) the redacted statement of Sgt. Joe Poindexter (Ex. 34); (6) the full Statement of Sgt. Poindexter (Ex. 35); (7) the ballistics report (Ex. 36); (8) the Statement of Willie Mae Stokes (Ex. 37); (9) the Statement of Geral Jones (Ex. 38); (10) the photograph of 949 East Brooks Road (Ex. 39); (11) a receipt of Geral Jones in the amount of $375.00 (Ex. 40); (12) a misdemeanor citation (Ex. 41); (13) a photograph of East Brooks Road (Ex. 42); and (14) a notice of property seizure (Ex. 43).
[13] The Court incorporates the findings of fact discussed previously.

On May 10, 2007, at or around 6:00 p.m., MPD responded to a robbery dispatch at the Easy Way grocery store located at 4599 Elvis Presley Boulevard. (Tr. 120.) The dispatch alerted MPD that there were two black male suspects and one black female suspect who left the scene in a white Chevrolet Tahoe with license plate number "389-LBC." (Tr. 120.) Less than one minute after hearing the broadcast, Officer Joseph Knight witnessed a vehicle meeting this description speed through the intersection of Elvis Presley and Bluebell heading north. (Tr. 213-14.) Officer Knight broadcasted his observation to the other officers over the radio. (Tr. 214.)

Approximately five minutes after the original broadcast, Officer Redd drove down Brooks Road to look for the reported robbers. (Tr. 222-25.) Officer Redd testified that he saw a white and tan Tahoe parked in front of 949 East Brooks Road, Suite 2, bearing license plate number "389-LQC," which was one letter off from the dispatched plate number. (Tr. 222-23.)

While waiting for additional officers to respond, Officer Redd talked to employees at the beauty shop next door to Suite 2, who reported that they had no knowledge of who owned the Tahoe in question. (Tr. 227.) Officer Redd testified that the door to Suite 2 was locked. (Tr. 227-28.)

According to Officer Potts, once he and Officer McMoore[14] arrived, they along with Officer Redd rang the doorbell or pressed the buzzer at 949 East Brooks Road, Suite 2. (Tr. 267.) Officers Redd and Potts both testified that Geral Jones ("Jones") answered the door. (Tr. 269.) The officers asked Jones if she knew who was driving the Tahoe in question parked outside. (Tr. 270-71.) Jones said she did not know. (Tr. 270-71.) The officers asked for permission to enter the business, and Jones verbally consented. (Tr. 272-75.) Officer Potts testified that Jones identified herself as the manager of the business. (Tr. 281-82.)

After entering the premises, the officers saw that Defendant, who was sitting across the room, matched the description of the suspect from the dispatch alert for the robbery of the Easy Way grocery. (Tr. 292-93.) The officers detained Defendant. (Tr. 292-93.) While Defendant was still present, the officers asked Jones for her consent to search the premises, and Jones gave verbal consent. (Tr. 164, 269, 288-93.) The officers then asked her to sign a Consent to Search Form ("Consent Form"). (Ex. 32.) Officer Potts explained the form to Jones, and Jones did not indicate that she had any problem reading or understanding the form. (Tr. 274.) Jones signed the Consent Form. (Ex. 32; see also Tr. 275.) Defendant

---

[14] Officer McMoore did not testify because he was killed in a motorcycle accident in June 2009. (Tr. 237, 275.)

and at least one other witness were present when Jones signed the Consent Form.  (Tr. 288-93.)  Neither Jones nor Defendant made any statements suggesting that Jones was not the manager of the business or that Defendant was the manager of the business.  (Tr. 235-36, 269.)  Jones cooperated with the officers while they searched the premises.  (Tr. 268-80.)  The consent to search form signed by Jones authorized officers "R. McMoore #7019 and L. Potts #1807 Memphis Police Department (titles of officers or agents and name of agency)" to conduct a complete search of "my premises located at 949 E. Brooks Suite #2."  (Ex. 32; see also Tr. 275.)

The premises consisted of an open room with tables and a business office connected to another room by a short hall.  (Tr. 270.)  The other room contained gambling machines.  (Tr. 270.) The premises appeared to be used for an illegal gambling operation.  (Tr. 270; Ex. 27.)  The officers noticed that one of the ceiling tiles was slightly out of place.  (Tr. 276-77.) There was a table located directly below the misplaced tile. (Tr. 276-77.)  The officers searched above the ceiling tile, where Officer Striplin found a .38 caliber firearm.  (Tr. 276-77; see also Ex. 36.)  The officers also testified that a blue t-shirt was recovered from the premises during the search.  (Tr. 290-91.)  The firearm and t-shirt are the subject of the instant motion.

Whether Defendant was the owner and/or operator of the business operating at 949 East Brooks Road, Suite 2 is a question of fact contingent on the credibility of the testimony given at the suppression hearing.  Defendant testified that he leased the property at 949 East Brooks Road, Suite 2, that it was his place of business, that he operated the business there, that the business was an illegal gambling operation, and that he and Tommy Nelson were partners in that business.[15]  (See Tr. 30, 41-42, 44-46, 60-61.)

On further cross examination, Defendant admitted that there was no documentation demonstrating that he owned or operated the property in any respect, or that Tommy Nelson leased 949 East Brooks Road, Suite 2, from Bates Properties.  He also could not provide documentation as to who had a business license to operate the premises.  (Tr. 41, 44-46.)  The Magistrate Judge "[did] not find [Defendant] to be a credible witness based on his multiple felony convictions, his bias as an interested party in the proceeding, and the lack of evidence corroborating his testimony."  (D.E. 290 at 6.)

Jones, the individual who consented to the search of 949 East Brooks Road, Suite 2, testified that she worked there from 2:00 pm until 10:00 pm, five or six days a week, that Defendant was her boss, that he paid her, that he was present on a daily

---

[15] Defendant stated, however, that he did not own or rent the area above the ceiling tiles where the gun was found.  (Tr. 53.)

basis, that he was in charge of the day-to-day operations, and that he closed the business most nights.  (Tr. 174-178, 183.) Jones's testimony, however, was inconsistent with previous statements she had made.  Jones admitted that when she was questioned by the police on the day of the search, she never told the police that Defendant was the manager, and that she identified only Tommy Nelson as the lessee.  (Tr. 181; Ex. 38.) She further conceded that she mentioned only Stokes and Charles Thomas as employees of the operation, and never mentioned Defendant as being involved in the business.  (Tr. 181-84.)  She testified that she was not paid or hired by Defendant but was hired by Tommy Nelson.  (Tr. at 184, 381-390; Ex. 38.)  In addition, Jones testified on cross-examination that she was "in charge" of the business at the time of the search (Tr. 374), that she closed the business every night except Fridays and Saturdays (Tr. 187), and that she had keys to the building (Tr. 187).  She pleaded guilty to a misdemeanor charge of possession of a gambling device.  (Ex. 41.)  Jones may be biased toward Defendant, since she knows his family and had recently borrowed money from Defendant's sister.  (Tr. 186-87.)

Moreover, the Magistrate Judge noted that Jones's testimony was inconsistent with Defendant's testimony in certain respects. For instance, Defendant testified that he hired Jones (Tr. 62), but Jones testified that Nelson hired her (Tr. 188).  Also,

Jones seemed to remember details when helpful to Defendant but claimed not to remember other details, such as when she was handcuffed and when the handcuffs were removed, if those details did not benefit her or Defendant. (D.E. 290 at 8.) The Magistrate Judge concluded that "[b]ased on her inconsistent statements, her personal relationship with the [Defendant's] family, her demeanor in the courtroom, her lack of memory of significant details, and her obvious desire to help [Defendant], this court does not find Jones to be a credible witness." (Id.)

Stokes testified on direct that she worked at the business at 949 East Brooks Road, that she had worked there about a year prior to the date of the search, that Defendant was her boss, and that she had known him a long time through his sister. (Tr. 167-68.) On cross examination, she acknowledged that the business was an illegal gambling operation, that Tommy Nelson was the actual owner of the "place," and that Defendant and Nelson were "together." (Tr. 170.) Stokes testified that Jones was one of the managers "on her shift." (Tr. 170.) Stokes stated that Defendant had given her cash payments in the past for her work at the business operation. (Tr. 170.) Stokes was not able to offer any additional proof to support the claim that Defendant was the owner or operator of the business or her boss, such as paychecks. The Magistrate Judge "[did] not find

Stokes's account of Defendant's position within the business operation to be credible." (D.E. 290 at 8.)

Finally, Kimitha Boscoe, the records custodian who worked for M3 Management, formerly Bates Properties, the company that leased the premises at 949 East Brooks Road, was called by the government as a witness on the issue of standing. She confirmed that the property was leased by Tommy Nelson and produced a lease and lease extension signed by Tommy Nelson for the premises and the period of time in question. (Tr. 196-99.) She testified that the monthly rent payment had occasionally been delivered by Defendant, but that Defendant had never held himself out as an owner or operator of the business, and that the owner of the property had never given consent to Tommy Nelson to sublet the property to anyone else. (Tr. 201.)

## B. Analysis

In her Report and Recommendation (D.E. 290), the Magistrate Judge recommended that Defendant's Motion to Suppress be denied. (D.E. 290 at 2.) The Magistrate Judge recommended the following conclusions: (1) Defendant does not have standing to suppress the evidence seized from 949 East Brooks Road because he lacked an expectation of privacy in the premises (id. at 11); (2) the search was proper under the Fourth Amendment because Jones had the actual and apparent authority to consent to the search at 949 East Brooks Road (id. at 12); (3) Jones's consent to the

27

search was voluntary (id. at 15); and (4) the officers at the scene did not exceed the scope of the consent to search the premises (id. at 17).

### i. Defendant's Objections to Findings of Fact

Defendant offers numerous objections to the Magistrate Judge's proposed findings of fact. (See Def.'s Objections to the Report and Recommendation on his Mot. to Suppress the Search of the Premises Located at 949 E. Brooks Rd. ("Def.'s Objs.") (D.E. 299).) The Court addresses each of Defendant's factual objections in turn.

Defendant asserts that the Magistrate Judge erred in categorizing the exhibits as relevant to a particular Motion to Suppress. (Def.'s Objs. 1; see infra n. 4, 9.) Defendant's objection is a distinction without a substantive difference. The Magistrate Judge and this Court have reviewed all of the exhibits and testimony offered in support of Defendant's Motions to Suppress. See Appendix I. While the Magistrate Judge's Report and Recommendation and this Order discuss the exhibits in the context of a particular motion, the Court is not stating that certain exhibits were offered in sole support of one of the two Motions to Suppress. See Appendix I at 4-5. Accordingly, the Court OVERRULES Defendant's objections.[16]

---

[16] Defendant objects to the Magistrate Judge's conclusion that Exhibits 35 and 36 were introduced by the Government (Rep. and Rec. 2), because the exhibits were introduced by the Defendant. (Def.'s Objs. 2-3.) Defendant further objects to the Magistrate Judge's finding that Defendant called only three

Defendant also objects to the Magistrate Judge's characterization of Exhibit 37 as "the Robbery Defendant's Statement" (Rep. and Rec. 2), because Stokes, who provided this statement, was never charged with robbery.  (Def.'s Objs. 4.) The Court SUSTAINS Defendant's objection.  The Court also SUSTAINS Defendant's objection that Exhibits 35 and 36 were introduced by the Government.  (Id. at 5.)  Exhibits 35 and 36 were introduced by the Defendant.

Defendant makes several objections to the credibility determinations made by the Magistrate Judge in her Report.  (Id. at 5-10, 14, 16 (Obj. Nos. 7, 9, 10, 14, 19).)  As noted previously, the Magistrate Judge's assessment of witnesses' testimony is entitled to deference.  United States v. Irrorere, 69 F. App'x 231, 236 (6th Cir. 2003).  The Magistrate Judge, as the fact-finder, had the opportunity to observe and hear the witnesses and assess their demeanor, putting her in the best position to determine credibility.  See Moss v. Hofbauer, 286 F.3d 851, 868 (6th Cir. 2002); United States v. Hill, 195 F.3d 258, 264 (6th Cir. 1999).  Having reviewed the record and Defendant's objections, the Court finds no reason to reverse the

---

witnesses (D.E. 290 at 2), because Defendant called Sergeant James A. Taylor after the Government initially called him as a witness. (Def.'s Objs. 4-5; see also Appendix I.)  Defendant also correctly notes that Exhibits 38 through 43 were introduced by the Government (not the Defendant). (See D.E. 290, pp. 2-3; D.E. 263.)  Defendant's objections are distinctions without a substantive difference and do not affect the Court's analysis. See Appendix I.

credibility determinations made by the Magistrate Judge.
Accordingly, the Court OVERRULES Defendant's objections.[17]

Defendant challenges the Magistrate Judge's finding of fact
that "[t]he dispatch alerted MPD that the suspects left the
scene in a white and tan Chevrolet Tahoe" with license plate
number "389-LBC" (D.E. 290 at 3), because the dispatcher only
stated the Tahoe was white.  (Def.'s Objs. 7 (citing Ex. 17.))
The Court SUSTAINS Defendant's objection.  The CD of the 911 and
Dispatcher calls describes the vehicle as a white Chevrolet
Tahoe.  (Ex. 17.)

Defendant objects to the Magistrate Judge's finding of fact
that "[t]he consent to search form signed by Jones authorized
Officers 'R. McMoore #7019 and L. Potts #1807 Memphis Police
Department (titles of officers or agents and name of agency)' to
conduct a complete search of 'my premises located at 949 E.
Brooks Suite #2'" (Rep. and Rec. 5), because the Report gives
the impression that the entire MPD had authority to conduct the
search.  (Def.'s Objs. 11-12.)  The Court does not agree.  The
reference to "Memphis Police Department" in the Magistrate
Judge's Report reflects the "name of [the] agency" that the
officers work for, which is explicitly noted on the consent

---

[17] Defendant also objects that the Magistrate Judge is biased against
witnesses Jones and Stokes and the Defendant.  (Def.'s Objs. 17-18.)
Defendant's objection is not supported by the record.  The Court OVERRULES
Defendant's objection.

form.  (See Ex. 32.)  Thus, the Court OVERRULES Defendant's
objection.

Defendant contends that the Magistrate Judge erroneously
found that "[t]he officers also testified that a blue T-shirt
was recovered from the premises during the search" (D.E. 290 at
5), because none of the officers could testify as to who found
the shirt or where on the premises the shirt was found.
Defendant objects that the shirt was recovered from the premises
at all.  (Def.'s Objs. 12-13.)  The Court finds ample support in
the record that the officers found the blue shirt at 949 East
Brooks Road.  Officer Potts testified that he saw the shirt
inside the premises during the search, and that one of his
fellow officers conducting the search found the shirt inside the
premises.  (See Tr. 277-78, 290-91.)  Officer Striplin and Sgt.
Poindexter testified similarly.  (See Tr. 304, 336)
Accordingly, the Court OVERRULES Defendant's objection.

Defendant objects to the Magistrate Judge's finding that
"[t]here were differing accounts between the officers and the
defense witnesses as to whether Akins was an owner and/or
operator of the gambling business being conducted at 949 E.
Brooks Road, Suite 2" (D.E. 290 at 5), because the Report does
not offer any testimony by the officers.  (Def.'s Objs. 13.)
The Court agrees that the officers did not provide direct
testimony as to Defendant's ownership or operation of the

business.  However, the Court does not agree with Defendant's objection that "the defense offered substantial testimony that [Defendant] was the owner and/or operator of the business" through the testimony of Defendant, Jones, and Stokes.  (Id.; see also Exs. 30, 31.)  As noted in the conclusions of law section of this Order, the Court finds that this testimony is insufficient to establish Defendant's standing in this case.[18] The officers were able to testify regarding what Jones told them on the scene, and the Government produced evidence as to the lease that was in effect as to the premises.  (Tr. 269-75, 281-82, 288-93; see also Ex. 30.)

After a complete de novo review, the Court ADOPTS the remaining findings of fact recommended by the Magistrate Judge in her Report and Recommendation.

---

[18] Defendant objects to the Magistrate Judge's finding that Defendant was present when Jones signed the consent form (Rep. and Rec. 14), because Defendant and Stokes were outside in patrol cars and therefore could not protest or dispute Jones's authority to sign the consent form.  (Def.'s Objs. 16.)  The Magistrate Judge concluded that "[Defendant] and Stokes were present, and neither identified himself or herself as one having authority over the business" and that "neither [Defendant] nor Stokes protested or disputed Jones' authority to sign the consent form."  (Rep. and Rec. 4.)  The testimony of Officer Potts (Tr. 287, 292-93) and Jones (Tr. 368-69) does not undermine this conclusion.  Officer Potts testified that upon entering 949 East Brooks Road, he observed two males and one female sitting at a table who matched descriptions of the suspects, including Morris Akins, that were broadcast over the police radio; the officers at the scene subsequently detained the Defendant.  (Tr. 292-93.)

## ii. Defendant's Objections to Conclusions of Law

Defendant made several objections to the Magistrate Judge's proposed conclusions of law.  The Court addresses each of Defendant's objections in turn.

Defendant objects to the Magistrate Judge's conclusion that Defendant "was not an owner or operator of the business and had no expectation of privacy in the commercial property located at 949 E. Brooks Road, Suite 2" (Rep. and Rec. 14), because Defendant's testimony that he was the "owner and/or operator of the business was substantial" and "none of the officers provided any testimony to the contrary." (Def.'s Objs. 14.)  For the same reasons, Defendant also challenges the Magistrate Judge's conclusion that Defendant did not have a reasonable expectation of privacy in the area above the ceiling tiles where the gun was found.  (Id. at 14-15.)  The Court is not persuaded.  As noted by the Magistrate Judge, it is undisputed that the property located at 949 East Brooks Road was commercial and housed a business.  (D.E. 290 at 9.)  The Supreme Court has found that owners or operators of a business have an expectation of privacy in their commercial property.  New York v. Burger, 482 U.S. 691, 699-700 (1987).  However, the expectation of privacy in business property is lower than the expectation in a personal residence.  Id. at 699-700.  A defendant who does not have an expectation of privacy in the property has no standing to dispute an illegal

search or seizure of a third person's property.  <u>Rakas v.</u>
<u>Illinois</u>, 439 U.S. 128 (1978).

In support of his argument that he was the owner and/or
operator of the business at 949 East Brooks Road, Defendant
relies on his testimony and the testimony of Jones and Stokes.
(Def.'s Objs. 14.)  The Magistrate Judge concluded that the
testimony of these witnesses was not credible.  (<u>See</u> Rep. and
Rec. 6-9.)  Defendant offered no documentary evidence to support
his claim.  Based on the evidence noted previously, the
Magistrate Judge properly concluded that Defendant "was not the
owner or operator of the business and had no expectation of
privacy in the commercial property located at 949 E. Brooks
Road, Suite 2."  (D.E. 290 at 11.)[19]

Defendant objects to the Magistrate Judge's conclusion that
Jones had actual and apparent authority to consent to the search
of 949 East Brooks Road, Suite 2 (Rep. and Rec. 13-14), because
Stokes, rather than Jones, was the manager of the business.
(Def.'s Objs. 15.)  The Court is not persuaded.  As noted by the
Magistrate Judge, Jones worked at the property as a
manager/cashier on Saturdays and Mondays through Thursdays from

---

[19] The Magistrate Judge also concluded that Defendant, as an individual
present on the premises to participate in an illegal gambling operation, had
no reasonable expectation of privacy in the public areas of the business.
(D.E. 290 at 11 (<u>citing</u> <u>Minn. v. Carter</u>, 525 U.S. 83, 88-95 (holding that
defendants had no legitimate expectation of privacy in another's premises
which they were visiting for the purely commercial purpose of bagging
cocaine); <u>United States v. White</u>, 401 U.S. 745, 752 (1971) (holding that an
even lower expectation of privacy exists in the premises of an illegal
business)).)

34

2:00 p.m. to 10:00 p.m.  (Tr. 177.)  Jones had keys to the business, and her duties included letting customers into the business.  (Tr. 177, 187, 374.)  Jones had authority to access the money for the business, which was located under a desk in the office.  (Tr. 389.)  When Officers Redd, Potts, and Woods rang the doorbell of the business, Jones answered the door and identified herself at the manager.  (Tr. 228-32, 235, 240, 268-69, 273-75, 410-12.)  Acting as a manager for the business, Jones signed a Notice of Property Seizure and Forfeiture (Ex. 43) and a Receipt for Monies (Ex. 40).  Based on this evidence, the Court finds that Jones had actual and apparent authority to consent to the search of 949 East Brooks Road.  Accordingly, the Court OVERRULES Defendant's objection.

Defendant challenges the Magistrate Judge's conclusion that the police search was within the scope of Jones's consent (Rep. and Rec. 17-18), because the officers allowed other MPD officers not named in the warrant to search the premises.  (Def.'s Objs. 17.)  Defendant's argument lacks merit.  As noted previously, the search warrant references the "Memphis Police Department." (Ex. 32; see also Tr. 275.)  Defendant cites no case law supporting the proposition that the only officers allowed to search the premises are those explicitly named in the warrant. The Court OVERRULES the Defendant's objection.

After de novo review, the Court ADOPTS the conclusions of law recommended by the Magistrate Judge in her Report and Recommendation.  (D.E. 290.)  Accordingly, the Court DENIES Defendant's Motion to Suppress the Search of the Premises at 949 East Brooks Road.

**IV. Conclusion**

For the foregoing reasons, the Court, upon de novo review, ADOPTS the Magistrate Judge's Reports and Recommendations. Defendant's Motion to Suppress Show-Up and State Court Identification of Defendant, and Defendant's Motion to Suppress the Search of the Premises Located at 949 E. Brooks Road, are DENIED.

**IT IS SO ORDERED,** this 6th day of July, 2011.


                              /s/ JON PHIPPS McCALLA
                              CHIEF UNITED STATES DISTRICT JUDGE

Appendix I
Correction of Certain Docket Entries and Discussion of Sequence
of Proceedings Before the Magistrate Judge[20]

There were a number of clerical errors in the docket
entries and Exhibit and Witness List (D.E. 263) that relate
directly to the record reviewed by the Court in connection with
Defendant's objections to the Magistrate Judge's Report and
Recommendations.  This Appendix sets out appropriate corrections
to the record.

Page 2 of the Exhibit and Witness List (D.E. 263) fails to
show that Officer Chester A. Striplin was sworn in (transcript
of August 17, 2010 at 299/D.E. 265 at 97 of 231) and
inaccurately identifies the officer as "Chester A. Strickland").
The correct spelling is "Striplin."  Id.  Two witnesses were
recalled and not resworn:  Sgt. James A. (Tony) Taylor (D.E. 265
at 114 of 231 and at 156 of 231; transcript August 17, 2010 at
316 & 358) and Geral Dina Jones (D.E. 264 at 173 of 203 and D.E.
265 at 161 of 231; transcript of August 16, 2010 at 173 and
transcript of August 17, 2010 at 363).  In the minutes prepared
by the courtroom deputy, Geral Dina Jones is initially listed as
"Jerell Jones."  D.E. 261.  She is correctly identified in D.E.
262 and in D.E. 264 at 173.  Docket Entry 261 is also incomplete
or inaccurate in other ways.  For example, the docket entry

---

[20]There are errors in both the witness/exhibits list (D.E. 263) and the minute
entries for hearing dates August 16 and 17, 2010 (D.E. 261 & 262).

1

excludes the middle name of the Defendant Morris Edward Akins and the middle initials of Dr. John C. Brigham and Lt. Jerry W. Webb.  The docket entry for August 17, 2010 (D.E. 262) is incomplete and incorrect.  For example, it incorrectly identifies Memphis Police Officer Chester Striplin as "Chester Strickland."  The docket entry fails to include a reference to the last witness testifying, Charnetta Woods, a Memphis police officer.  It fails to reflect that Geral Dina Jones was recalled and also fails to reflect that Memphis Police Officer James A. (Tony) Taylor was recalled.  It also excludes middle names and middle initials, excluding the middle name of Officer Lee Eldelone Potts, as well as excluding the middle initial of Officer James A. Taylor.  Defendant's name is incorrectly spelled in docket entry 263, the Exhibit and Witness List.  In the style on the Exhibit and Witness List, Defendant's name is incorrectly spelled as "Morris Edward Atkiins" and he listed on the witness list as "Morris Edward Atkins."  Hearing Exhibit 1 (Shelby County Sheriff's Office mugshot profile) to the August 16, 2007 hearing reflects the Defendant's last name as "Akins." This is consistent with the transcript, D.E. 264 at 30 of 203; transcript of August 16, 2010 at 30; the criminal complaint (D.E. 3), and the indictment (D.E. 18 & 20).  Because these inconsistencies might cause confusion, they have been identified.

Some of the confusion appears to have occurred because of the sequence in which witnesses and motions were presented to the Magistrate Judge.  At the outset, the Magistrate Judge inquired of counsel "do we want to take up the proof as to both [motions] at the same time or do the motions separately?" Transcript of August 16, 2010 at 7/D.E. 264 at 7.  Mr. Stengel, lead counsel for the Defendant, responded "Judge from Mr. Akins' perspective, I would suggest separate.  Mr. Akins bears the burden of the Motion to Suppress the Show-Up." Id.  Counsel for the government concurred, indicating "Judge, I think I am in general agreement.  First of all, they're moving to suppress the eyewitness identification.  So, the burden is on them to show that the identification procedure used was unnecessarily suggestive."  Id. at 8, D.E. 264 at 8.  To these comments, the Magistrate Judge replied "I interpret Mr. Stengel saying let's hear all the proof on the Motion to Suppress the Identification. Then let's hear the proof on the other.  . . .  But I agree with Mr. Arvin, there is going to be some overlap on witness testimony.  It's fine with me if we combine both of the motions."  Id. at 10; D.E. 264 at 10.

In response to the Magistrate Judge, Mr. Stengel replied "that's acceptable to Mr. Akins, your Honor.  I think as a practical matter that's better and, frankly, with me starting to call witnesses, we are going to end up focusing on the show-up

first and then to the extent they blend, it will be with later witnesses." Id.

This general approach of beginning with evidence on the Motion to Suppress the Show Up identification and then proceeding with the second Motion to Suppress, with some of the testimony applying to both motions, was applied throughout.  For example, at the conclusion of the testimony of Geral Dina Jones on the second day (Transcript of August 17, 2010 at 396; D.E. 265 at 194 of 231), the Magistrate Judge, in response to an objection by defense counsel observed "She was called yesterday on the issue of standing.  We did bifurcate her testimony, but I am considering all of her testimony.  On the other hand, I don't want to limit the cross to . . . what she has testified to today.  So I am, because it all goes to the same motion, that is the motion to suppress the Brooks Road search.  . . .  I'm going to let the government examine her on the issue of this . . . charge."  Transcript, August 17, 2010 at 396-97; D.E. at 194-95.

The District Court, in conducting its de novo review regarding both reports and recommendations of the Magistrate Judge has, in any event, reviewed the entire transcript from both days of hearings, all of the exhibits, and the complete content of the CDs submitted (hearing exhibits 17 (the 911 and dispatch calls of May 10, 2007) and 18 (the May 21, 2007

preliminary hearing of Morris Edward Akins in Division 12, Shelby County General Sessions Criminal Court).

A total of 15 witnesses testified in the consolidated hearing before the Magistrate Judge on Defendant's Motion to Suppress Show Up and State Court Identification of the Defendant and Defendant's Motion to Suppress the Search of the Premises located at 949 East Brooks Road, Memphis, Tennessee.

The fifteen (15) witnesses appeared in the following order:

August 16, 2010:

1.   Dorv Armour (Inquisitor Investigations)

2.   Morris Edward Akins (Defendant)

3.   John C. Brigham, Ph.D. (Emeritus Professor of Psychology, Florida State University)

4.   Jerry W. Webb (Lt., Memphis Police Department)

5.   Susan Taylor (Assistant District Attorney, Office of the District Attorney, Shelby County, Tennessee)

6.   Willie Mae Stoke (person at 949 East Brooks Road, Suite No. 2 on May 10, 2007)

7.   Geral Dina Jones (person at 949 East Brooks Road, Suite No. 2 on May 10, 2007)

8.   Kimitha Boscoe (Administrative Assistant, M3 Management formerly Bates Properties)

August 17, 2010:

(9)   Joseph Henry Knight (Officer, Memphis Police Department)

(10) Marcus Reed (Officer, Memphis Police Department)

(11) Lee Eldelone Potts (Officer, Memphis Police Department)

5

  (12) Chester A. Striplin (Officer, Memphis Police Department)

  (13) James A. ("Tony") Taylor (Officer, Memphis Police Department)

  (14) Joseph Poindexter (Sergeant, Memphis Police Department)

  (15) <u>recalled</u> James A. "Tony" Taylor

  (16) <u>recalled</u> Geral Dina Jones

  (17) Charnetta Woods (Officer, Memphis Police Department)

A total of 43 exhibits were received during the August 16-17, 2010 hearing.  The exhibits are listed in the Exhibit and Witness List, D.E. 263.